IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| HOSSAIN NMN HOUSHMAND and, ) | Case No. 04-21177-drd-7 |
| AZIZEH NMN BALAKHANLO, ) | |
| Debtors. ) | |
| _____ ) | |
| HOSSAIN NMN HOUSHMAND, ) | Adversary No. 04-2029 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MISSOURI STUDENT LOAN PROGRAM, et al., ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

Hossain Houshmand ("Debtor") filed a complaint seeking a determination that his student loan debt should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(8) on the ground that repayment of such debt would impose upon him an undue hardship, which allegations defendant Missouri Student Loan Program ("Defendant") denied. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Debtor's student loan debt is not dischargeable pursuant to § 523(a)(8).

I. FACTUAL BACKGROUND

Debtor received a Bachelor of Science degree in 1963 and a Master of Science in 1987 from the University of Missouri-Rolla. He funded a portion of his graduate education with

student loans issued by the Missouri Higher Education Loan Authority ("MOHEALA"). In 1991, Debtor obtained a consolidated loan. Debtor was born on August 18, 1939, and was 48 years old when he obtained the student loans in 1987. Debtor has obtained forbearances and deferments for a total of seventy-six months during the repayment term of the student loan. The student loan account was placed in default status on April 9, 2001, but Debtor cured the default and the account was rehabilitated on March 3, 2003. On October 25, 2004, Defendant purchased the student loan from MOHEALA. As of November 8, 2004, Debtor is indebted to Defendant in the amount of $31,712.06.

Debtor is married to Azizeh Balakahanlo and has 2 daughters and a step-daughter. None of the children is a dependent. Debtor's youngest daughter lives with him and his wife and he has contributed to her college education and living expenses over the past four years. Debtor's wife was a full-time employee at Watlow until she was placed on medical leave of absence on June 7, 2004. She was eligible to receive short term disability benefits of $250 per week until December 6, 2004. Debtor has been employed by the Missouri Department of Transportation since 1995 and his current annual salary is $49,416.00.

Debtor and his spouse filed a bankruptcy petition under Chapter 7 on May 12, 2004 and received a discharge on November 5, 2004. On July 22, 2004, Debtor filed a Complaint Seeking Harship Discharge of Student Loan under 11 U.S.C. § 523(a)(8), which was amended on September 28, 2004.

## II.  DISCUSSION

### A.  Undue Hardship

Debtor contends that it would be an undue hardship for him to repay the remaining

amount due on his student loan. Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or his dependents. The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor. *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981); *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001). Unfortunately, the Code contains no definition of the phrase "undue hardship" and interpretation of the concept has been left to the courts. In this Circuit, the applicable standard is the "totality of the circumstances" test. *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704; *see also, Fahrer v. Sallie Mae Servicing Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004). In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular case. *Long*, 322 F.3d at 544; *Ford*, 269 B.R. at 676. The principal inquiry is to determine whether "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged. *Long*, 322 F.3d at 554. The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on her student loan without reducing what the debtor and her dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

The "totality of the circumstances" is obviously a very broad test, giving the Court

considerable flexibility. As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assisting them in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *Vermaas v. Student Loans of North Dakota (In re Vermaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case, the Court examines each factor separately.

B. Analysis of the Totality of the Circumstances

1. Past, Present and Reasonably Reliable Future Financial Resources

The first factor the Court must consider is Debtor's past, present and reasonably reliable future financial resources. Debtor's original Schedule I showed a combined net monthly income of $4,002.[1] That schedule was subsequently amended to reflect changes experienced by both Debtor and his spouse, reducing the net monthly income to $3,810.[2] Additional evidence admitted at trial shows another change and reflects current net monthly income of $3,342 for

---

[1] Plaintiff's Ex. A.

[2] Plaintiff's Ex. B.

Debtor and his spouse, consisting of Debtor's $2,860 in wages and the $482 in social security disability payments his spouse expects to receive.[3] *See In re Sweeny*, 304 B.R. 360 (D. Neb. 2002) (court must consider spouse's income in determining undue hardship).

Regarding Debtor's past economic resources, he and his spouse have in previous years earned significant combined yearly income. The tax returns for the years 2002 and 2003 indicate adjusted gross income of $50,461 and $61,672, respectively.[4]

As to Debtor's future income, as more fully discussed below, there was no convincing evidence presented that Debtor cannot continue to work for several additional years, perhaps five to seven. Debtor himself was unsure as to how much longer he might be able to work.[5] Although he has numerous medical conditions, they appear to be adequately controlled by medication and do not appear to interfere significantly with his work responsibilities. There was no expert medical testimony presented to demonstrate that he must retire now or in the immediate future for medical reasons. In fact, the records show that Debtor made a request for a letter to that effect to one of his physicians who refused to provide it. As discussed below, It seems clear that Debtor's wife is unable to continue to work and her only contribution to the household's income will be a monthly social security payment. However, Debtor's wife's condition does not affect his ability to continue working.

2. Reasonable Necessary Living Expenses

The second factor the Court must look at is Debtor's reasonable living expenses.

---

[3]Transcript, p. 13;

[4]Plaintiff's Exs. I & J.

[5]Transcript, p. 76.

Debtor's household expenses have been in flux. The original Schedule J showed combined household expenses of $4,140.[6] An amended schedule shows expenses of $3,601.[7] Trial testimony reflected that certain adjustments should be made to those expenses, as some of the expense items will be discontinued in the immediate future. First, Debtor's daughter will be graduating from the University of Missouri in May 2005 and the average monthly expenses of $422 paid for her support will terminate.[8] Second, the payments on loans maintained on the two vehicles used by Debtor and his spouse are also scheduled to expire in the next several months, reducing Debtor's expenses by another $400. Finally, within approximately another six months, Debtor will have made final payment on rent-to-own contracts he executed for certain furniture, which will further reduce the household expenses by $140.[9] The total adjustment of $962 results in a new monthly household expenditure figure of $2,639. Using these figures, the debtor has $703 in excess monthly income which could be used to make payments on the student loan.

3. Other Relevant Facts and Unique Circumstances

As to the third factor the Court must evaluate, Debtor has not presented evidence of unique facts or circumstances that the Court believes will cause an undue hardship for Debtor to repay the student loan. The mere fact that Debtor has reached normal retirement age does not mean that the debt should be discharged. *See, e.g., Goulet v. Educ. Credit Mgmt. Corp.*, 284 F.3d 773, 779 (7th Cir. 2002) (finding that by returning to graduate school at age 45 and

---

[6]Plaintiff's Ex. B.

[7]Plaintiff's Ex. E.

[8]Transcript, p. 29.

[9]Transcript, pp. 55-56.

voluntarily assuming debt, debtor must have believed he had future earnings potential); *see also, In re Mandala*, 310 B.R. 213, 222 (Bankr. D. Kan. 2004) (finding fact that obligations will persist past debtor's retirement age is the result of her choosing to return to school on borrowed money at age of 36); *cf. In re Fahrer*, 308 B.R. 27 (Bankr. W.D. Mo. 2004). Although Debtor is approximately 65 years of age now and would be eligible to retire in April 2005, he is not obligated to do so. In this case, there are certain facts that mitigate the effect of age as an indicator of undue hardship. Debtor took out this loan later in life in order to complete his graduate education in engineering. Specifically, he obtained the original loan in 1987 when he was approximately 48 years old.[10] The consolidation promissory note was executed in 1991 at which time he was 52 years old. The repayment schedule specified in that note extended over a 15-year period of time. Accordingly, Debtor knew at the time he executed that note that if he made all the payments required by that schedule, he would be 67 years old at the time the indebtedness was repaid. Debtor did not, however, make all the payments as required. He requested forbearances or deferments for a total period of approximately 76 months (more than six years) which requests were honored by the lender.[11] Debtor should therefore have understood that the effect of those requests would be to either extend the length of the repayment period or increase the amount to be paid, including the amount of the required monthly payments, or both. As a result of having requested and received these deferments, Debtor might reasonably expect therefore to have been required to pay on this debt until sometime in his early 70s. It does not therefore seem unreasonable to suggest that Debtor should be required to

---

[10] Transcript, p. 68.

[11] Def.'s Ex. 1, Joint Stipulation, ¶ 11.

continue to pay on his consolidated student loan for some period of time after his eligibility for retirement and thus to continue to work in order to generate the income necessary to make those payments.

It seems clear that Debtor's wife is unable to continue to work and thus to contribute to the household income through employment. She has been on a temporary disability leave and the condition which caused her to miss work does not appear to have improved. She does not expect to be able to return to work after the disability payments cease. Her temporary disability income has been exhausted and she is not eligible for unemployment benefits. Debtor's wife offered uncontradicted testimony that as a result of persistent pain and other problems, she is unable to work in an office or other environment.[12] It appears likely that her only contribution to the income of the household from this point forward will be the $482 per month in social security disability which she testified she expects to begin drawing in the immediate future. Debtor's wife's inability to work, however, does not affect his ability to do so. Despite her inability to contribute other than through the disability income, the household should, as a result of some expense reductions, have substantial net income to make payments on the consolidated student loan.

Debtor testified and offered other evidence that he suffers from a number of medical conditions including diabetes, a heart condition, and an ulcer.[13] Debtor asked the Court to draw the conclusion that these health conditions limit his ability to perform the tasks required of him in his employment and otherwise restrict his ability to continue to work for an extended period

---

[12] Transcript, p. 17;

[13] Transcript, pp. 44-49.

time. The record, however, does not support these conclusions. Debtor's conditions appear to be reasonably well controlled by medication. Although Debtor testified that shortness of breath sometimes makes it difficult for him to perform physical inspections of bridges and other structures, he also testified that he is not often required to perform such field inspections.[14] While Debtor would apparently like the Court to conclude that he is unable to continue to work past his eligibility for retirement, even he was unwilling to say anything other than he did not know how many additional years he might be able to work.[15] In an effort to buttress his contention with regard to his medical conditions and their impact on his employment, Debtor introduced into evidence a number of medical records. Unfortunately, those records provide no support for and may actually contradict Debtor's assertion that his conditions limit his ability to work. As pointed out on cross-examination, Debtor apparently asked his physician to compose a letter for him to the effect that he was unable as a result of his heart condition, to continue to work. The records, however, show that his physician rejected this request.[16] Accordingly, the testimony does not support a conclusion that Debtor cannot continue to work past his current date of eligibility for retirement.

Debtor apparently did not file bankruptcy for the sole or even principal purpose of discharging his student loans. The approximate $31,000 balance on his consolidated student loan is less than half of the total debt which he seeks to discharge[17]. In addition, he has made

---

[14] Transcript, p. 50.

[15] Transcript, p. 50.

[16] Plaintiff's Ex. O, p. 7; Transcript, p. 78.

[17] Transcript, p. 40.

some effort to repay this debt. While Debtor made regular monthly payments on the loan during the year 2002, only two payments, in minimal amounts were made during 2003.[18] There is no evidence that payments were made during 2004. Records of payments received show that Debtor has paid approximately $10,000 on the consolidated student loan which had an original principal balance of approximately $13,000.[19] In addition, during those periods of time when he was unable to make the full monthly payment, Debtor communicated with the holder of the loan and requested a forbearance or deferment. These factors do lend some support to Debtor's request to discharge the loan.

During this same period of time, Debtor made the decision to use a substantial part of his net income to pay expenses of his daughter's college education.[20] His 2003 tax return indicates that he spent at least $5,073 on college expenses during that year.[21] He testified that he paid similar amounts for her benefit in prior years.[22] Accordingly, the evidence justifies a finding that approximately $20,000 was paid during this four year period for this purpose, while Debtor, for the most part, made minimal payments on his student loan. If this sum had been applied in full to the loan, it would have made major progress toward retiring the balance of the debt which was $31,712.06 as of November 8, 2004. While it is understandable and even laudable for Debtor to provide assistance to his daughter in paying some of the expenses of her college education, at a time when he has substantial student loan debt of his own it is not unreasonable to expect him to

---

[18] Tr., p. 75; Plaintiff's Ex. W.

[19] Transcript, p. 37.

[20] Transcript, p. 28.

[21] Plaintiff's Ex. I.

[22] Tr., pp. 72-73.

prefer his creditor and ask his daughter to make similar arrangements to pay for her education. Additionally, Debtor has found some way during this period of time to increase the monthly amount of money he pays into his deferred compensation account. Debtor testified that he had previously been contributing the sum of $75 per month with the state adding $25 on a monthly basis, but that he had recently increased his contribution to $175 per month.[23]

Debtor has a number of repayment options available to him, which in combination could retire this debt within a reasonable time.[24] Debtor has at least three repayment options available to him from MOHELA. Those options involve repayment of the loan on a 20-year amortization schedule at an 8.25% rate of interest with either uniform or graduated monthly payments ranging anywhere from $222.21 to $270.21. A more attractive option for Debtor given his age may be a federal direct student loan, which he may repay at the same rate of interest, but may choose among repayment options, one of which would permit complete repayment of the loan within a 10-year period, if he made monthly payments of $388.96. According to Debtor's own testimony as to his current income and expenses, his household income exceeds expenses by approximately $700. Debtor could make the $388 monthly payments on a federal direct loan and, by contributing additional amounts each month, could retire the debt in less than ten years, without invading his deferred compensation account, which will have grown in value somewhat over that time.

According to the terms of the Standard Repayment Plan for a Federal Direct Consolidation Loan, Debtor would pay a total of $46,674.81 in principal and interest on the

---

[23]Transcript, p. 62; Plantiff's Ex. X.

[24]Defendant's Ex. 15.

student loan over a ten-year period at the rate of $388.96 per month.[25] As indicated above, however, Debtor has more than that in net monthly income. If Debtor contributed an additional $300 per month (for a total payment of $688) to be applied to the principal balance of the student loan, he could, over a six-year period pay the sum of $49,536 on the student loan. This should be more than sufficient to pay principal and all accrued interest and retire the debt in full, since less than that is required to pay principal and accrued interest over a longer period according to the Standard Repayment Plan. Debtor could thus repay the student loan by the time he is approximately 71 years old, only four years after he would have completed repayment according to the original loan schedule. In this scenario, Debtor could repay his student loan without liquidating his deferred compensation account, thus saving that money which should have grown to approximately $17,500[26] to meet his anticipated shortfall in income after retirement.

Based on the evidence presented, the additional relevant facts and unique circumstances presented to the Court do not support a finding that it would be an undue hardship for Debtor to repay his student loan.

For all of the above reasons, the Court finds that the indebtedness owed by debtor Hossaingholi Houshmand to defendant Missouri Student Loan Program is not dischargeable pursuant to 11 U.S.C. § 523(a)(8).

---

[25] Defendant's Ex. 15, attachment thereto.

[26] Debtor has a deferred compensation account with a current balance of $3,131, which he would be eligible to receive in a lump sum upon retirement. He testified that after two additional years, that will have grown to $5,000 or $6,000. (Transcript, p. 79). This seems to be a conservative estimate. Debtor testified that he recently increased the amount of his personal contribution to his deferred compensation account to $175 per month. With the $25 per month the Missouri Department of Transportation places in the account, it is growing at the rate of $200 per month or $2,400 per year. After an additional two years, the account will have grown by $4,800, to a total of $7,931. If he works for six years beyond his eligibility for retirement, the account will have grown by an additional $9,600 to $17,531. All of this assumes no investment income or losses.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated: <u>February 16, 2004</u>                    <u>/s/ Dennis R. Dow</u>

                                                          THE HONORABLE DENNIS R. DOW
                                                          UNITED STATES BANKRUPTCY JUDGE

Copies to:

Dianna Coy Long
Shelley L. Forrest